UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISAAC THOMPSON,

    Petitioner,

v.                                         Case No. 8:20-cv-2821-MSS-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**O R D E R**

Thompson petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for robbery with a firearm or deadly weapon. (Docs. 1 at 1 and 7-2 at 17) After reviewing the petition (Doc. 1), the response (Doc. 7), and the relevant state court record (Doc. 7-2), the Court **DENIES** the petition.

**PROCEDURAL HISTORY**

Thompson pleaded no contest to robbery with a firearm or deadly weapon. (Doc. 7-2 at 12) The trial court sentenced Thompson to thirty years in prison. (Doc. 7-2 at 17–21) Thompson appealed, and the state appellate court affirmed. (Doc. 7-2 at 28) The post-conviction court denied relief (Doc. 7-2 at 244–49), and the state appellate court affirmed. (Doc. 7-2 at 305) Thompson's federal petition follows.

At the change of plea hearing, trial counsel stipulated that a factual basis supported the plea. (Doc. 7-2 at 326) A judicially noticed arrest affidavit[1] summarizes the facts that supported the plea:

---

[1] *See* Notice of Case Action, *State v. Thompson*, No. 12-CF-15131 (Fla. 12th Jud. Cir.).

1

On November 6, 2012, at approximately [6:35 P.M.], four black males entered the Mayors Jewelry Store located at 3501 South Tamiami [Trail], 119 Southgate Plaza, Sarasota, Florida. The first black male to enter confronted employee D.G. and pointed a handgun at her advising this is a robbery. The first black male who was clad in a dark hoodie-type sweatshirt grabbed D.G. by the back of the shoulder and dragged her to the rear of the sales area. On the way there, the first black male pointed his handgun at another employee M.S. who was toward the rear of the sales area. The first black male then ordered her along with D.G. to the ground. The three other black males began smashing the locked display cases in the front of the store and began removing TAG Heuer brand watches and jewelry from the smashed cases. The first black male then asks D.G. and M.S. if there any employees in the back of the store, to which they answered yes. The first black male then goes to the rear employee's only area and is met by employee J.G. The black male then points his firearm at J.G. [and] orders her to open a cash register, which she does. The first black male then removes the money drawer and orders J.G. to the ground. All four black males then flee the store.

In reviewing video from the store, the first black male can be seen entering wearing a dark hoodie-type sweatshirt and gloves holding a dark handgun. The other three black males are observed wearing grayish colored hoodie-type sweatshirts and gloves. The bigger of the three was armed with a hammer that he used to break the glass on the locked display cases.

Your affiant interviewed an employee K.C. of the business across from Mayors Jewelers. K.C. advised she was working near a window in her store when she heard something break. Soon after, she saw three or four black males wearing hoodie-type sweatshirts flee out the doors of the mall. She then observed the males enter a vehicle which was stopped in the circle [in] front of the mall. K.C. advised, when the males opened the car doors, a dome light went on and she observed a black male driver who she described to be heavier than the other black males that fled the mall. K.C. described him as being 245 pounds to 250 pounds. K.C. advised she observed the vehicle to be a silver four door midsized with a Florida tag. K.C. advised the tag to be 166–__HC. K.C. provided responding officers with the vehicle description and tag number as well as descriptions of the black males.

A short time later a Sarasota Sheriff's Office deputy located a vehicle matching the description traveling southbound on Interstate 75. The vehicle exited at Laurel Road and began to flee. After a chase, the five black males were observed fleeing the vehicle which had been disabled via stop sticks. The five black males were located with the assistance of canines and the SSO helicopter and taken into custody. In plain view, in and around the vehicle, several gloves were observed.

The Venice Police Department was contacted by employees of PGT Windows, which is in the area where the black males fled the car. The employees advised they observed the black males jump a fence and throw down a pillowcase which contained nine TAG Heuer brand watches all of which had tags from Mayor Jewelers. It also contained one pair of gloves consistent with those worn during the robbery.

The five black males were identified as: (1) Marcus Wright 10/14/78; (2) Isaac Thompson 01/30/80; (3) Godtrel Grant 10/31/76; (4) Marvin Wright 10/13/77; (5) Clarence Mack 01/03/77.

When arrested Godtrel Grant gave the name of Corey Young and Corey Thompson. Clarence Mack gave the name Dale Jackson. Marvin Wright gave the name Ocho Wright.

## STANDARDS OF REVIEW

**AEDPA**

Because Thompson filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

3

>   determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Thompson asserts ineffective assistance of counsel — a difficult claim to sustain. "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on

4

ineffective assistance of counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). *Strickland v. Washington*, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For a challenge to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

5

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

In a decision without a written opinion, the state appellate court affirmed the order denying Thompson post-conviction relief. (Doc. 7-2 at 305) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Because the post-conviction court provided reasons for denying Thompson's claim in a written order (Doc. 7-2 at 245–46), this Court evaluates those reasons under Section 2254(d).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*

*v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court dismisses the claim as procedurally defaulted. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

**Ground One**

Thompson asserts that trial counsel deficiently performed by advising that, if he pleaded guilty without a plea agreement, the prosecutor would ask the trial court to impose a sentence of twenty years in prison and the trial court would accept the prosecutor's recommendation and impose the twenty-year sentence. (Doc. 1 at 3–5) Thompson contends that he pleaded guilty because of that advice, and the trial court sentenced him to thirty years. (Doc. 1 at 3–5)

The Respondent asserts that the claim is procedurally defaulted because Thompson presents new facts in his federal petition. The Respondent contends that Thompson alleges for the first time in his federal petition that trial counsel never reviewed the change of plea

form with Thompson and that trial counsel never informed Thompson that the trial judge could impose the statutory maximum sentence. (Doc. 7 at 8–9) However, in his motion for post-conviction relief, Thompson alleged that "[he] did not comprehend the aforementioned [ ] agreement, in that, his counsel misinformed him of what he was agreeing to." (Doc. 7-2 at 207) He further alleged that trial counsel "relayed to [him] that . . . [the trial court was] only allowed to sentence [him] to no more than what the Office of the State Attorney asks for." (Doc. 7-2 at 207) Because Thompson's post-conviction motion and federal petition raise the same claim based on substantially the same facts, Thompson exhausted the claim. *Pope v. Sec'y, Dep't Corrs.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("The Supreme Court has instructed us that if 'the substance of a federal habeas corpus claim [was] first . . . presented to the state courts,' 'despite variations in the . . . factual allegations urged in its support,' the claim is exhausted.") (quoting *Picard*, 404 U.S. at 277–78).

The Respondent further asserts that the claim is procedurally defaulted because Thompson failed to raise the claim in his brief on post-conviction appeal. (Doc. 7 at 9) The post-conviction court struck Thompson's initial and amended post-conviction motions because the motions lacked an adequate oath and granted Thompson leave to amend the motions. (Doc. 7-2 at 198–99) The post-conviction court denied Thompson's second amended post-conviction motion without leave to amend. (Doc. 7-2 at 244–48) On appeal, Thompson argued that the post-conviction court abused its discretion by failing to grant him an additional opportunity to amend. (Doc. 7-2 at 299–301)

Under Florida law, a post-conviction court that strikes a post-conviction motion as legally insufficient must give a defendant at least one opportunity to amend the motion. *Spera v. State*, 971 So. 2d 754, 762 (Fla. 2007). "'The striking of further amendments is

8

subject to an abuse of discretion standard that depends on the circumstances of each case.'" *Spera*, 971 So. 2d at 761 (citation omitted). On post-conviction appeal, Thompson argued that the post-conviction court abused its discretion under *Spera* by failing to grant him additional leave to amend. (Doc. 7-2 at 299–301) By requesting relief to further pursue his ineffective assistance of counsel claim, Thompson fairly presented the claim to the state appellate court. *See, e.g.*, *Henry v. Fla. Dep't Corrs.*, 197 F.3d 1361, 1368 (11th Cir. 1999) ("Henry's state-court appeal, which requested only the evidentiary hearing denied by the trial judge, was therefore appropriately modest. It asked for the most he could reasonably have expected from the appeals court — an order vacating and remanding for an evidentiary hearing. Exhaustion should not be construed to mandate more."); *Holland v. Florida*, 775 F.3d 1294, 1316 (11th Cir. 2014) (holding that the petitioner adequately exhausted a claim on post-conviction appeal by only "challenging [the post-conviction] court's failure to attach to its summary denial portions of the record refuting the allegations").

The post-conviction court denied the claim as follows (Doc. 7-2 at 245–46) (state court record citations omitted):

> Defendant alleges that his counsel "advised the Defendant to enter into an open plea to the court for the express purpose and promise of only receiving a sentence of twenty years as opposed to the thirty years that the Defendant was sentenced to." Defendant claims that his counsel failed to explain that Defendant could be sentenced to the statutory maximum, and that his counsel informed him that "the prosecution would ask for less than twenty years and the judge would only sentence the defendant to what the prosecution requested." Defendant also states that he and his family were:
>
>> "assured of a certain outcome by counsel. The defendant did not comprehend the aforementioned plea agreement, in that, his counsel misinformed him of what he was agreeing to. Counsel relayed to the defendant that

9

> he was only agreeing to a sentence of twenty years [in prison] and this was solely because the Court is only allowed to sentence the defendant to no more than what the Office of State Attorney asks for. Counsel informed the defendant, and his family, that he (the defendant) could only get what the State Attorney asked for him to be sentenced to. In the event that the defendant would have been aware that he was agreeing to be sentenced to thirty years [in prison] then he would not have entered into the aforementioned open plea and instead would have chosen to proceed to trial."
>
> In support of his claim, Defendant attaches three affidavits of family members, each of which appear to corroborate Defendant's claim.
>
> The record, however, conclusively refutes Defendant's allegation. An examination of the plea colloquy between Defendant and the Court reflects that Defendant testified, under oath, that no one had promised him that the court would give him "a specific sentence or a certain sentence," and that Defendant read, reviewed, and understood the plea form that he signed, which stated that Defendant understood that his plea was open, with sentencing to follow, and that "no one has made any promises or guarantees to [Defendant], nor in any way forced or threatened [Defendant] to enter this plea . . . ." "[A] defendant is bound by the statements he makes under oath during a plea colloquy." *Rodriguez v. State*, 223 So. 3d 1095, 1097 (Fla. 3d DCA 2017). *See also Scheele v. State*, 953 So. 2d 782, 785 (Fla. 4th DCA 2007) ("[a] plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in a case."). Because this claim is conclusively refuted by the record, [the claim] will be denied.

Thompson signed a change of plea form that stated in Paragraph Six: "I understand that if the Court accepts my plea to the charge[ ] listed in Paragraph One, my sentence will be 'open.'" (Doc. 7-2 at 256) The form informed Thompson that the maximum penalty for the crime was life in prison, and Thompson agreed: "Other than the proposed sentence set

10

out in Paragraph Six, no one has made any promises or guarantees to me. . . ." (Doc. 7-2 at 256)

At the change of plea hearing, the Court conducted a colloquy with Thompson to ensure that he knowingly and voluntarily pleaded guilty (Doc. 7-2 at 322–27):

| | |
|---|---|
| [Trial court:] | Mr. Thompson, I have been told that you wish to enter what's been called an open plea, which means that you will enter a plea to the charge of robbery with a firearm or deadly weapon, which is a first-degree felony punishable by life in prison. There is no mandatory minimum that applies to this Defendant, is there? |
| [Prosecutor:] | No, there is not. |
| [Trial court:] | And because they're not making allegations against you that would require a minimum mandatory, there is no minimum mandatory sentence with respect to a firearm. However, there is, of course, Florida's Criminal Punishment Code Scoresheet. Which scores to the bottom of? |
| [Prosecutor:] | The bottom is 70.65 months, and the top is life in prison. |
| [Trial court:] | Okay. So, at a minimum, it's not a mandatory minimum, but at a minimum, I must sentence you to at least 70.5 — .65 months? |
| [Prosecutor:] | Yes, Your Honor. |
| [Trial court:] | Unless there's some valid reason to depart below that, and I can go all the way up to life in prison. So that's the range you're giving me from basically — if there's a legal basis, I can go to probation, but you should expect that at a minimum, you're going to get the 70.65 months all the way |

11

|                   |                                                                                                                                                                              |
|-------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                   | up to life in prison. Do you understand that?                                                                                                                                |
| [Thompson:]       | Yes, sir.                                                                                                                                                                    |
| [Trial counsel:]  | It'd be about five and a half years in prison.                                                                                                                               |
| [Trial court:]    | Has anyone promised you that I would give you a specific sentence or a certain sentence?                                                                                     |
| [Thompson:]       | No, sir.                                                                                                                                                                     |
| [Trial court:]    | Are you in any way being forced, threatened, or coerced to get you to enter into this plea?                                                                                  |
| [Thompson:]       | No, sir.                                                                                                                                                                     |
| [Trial court:]    | So your lawyer, Mr. Richardson, didn't tell you, hey, you got to plead otherwise there's no hope for you, nothing like that?                                                 |
| [Thompson:]       | No, sir.                                                                                                                                                                     |
| [Trial court:]    | All right. And you're doing so freely and voluntarily?                                                                                                                       |
| [Thompson:]       | Yes, sir.                                                                                                                                                                    |
| [Trial court:]    | I have been given a form called an Acknowledgment and Waiver of Rights, also known as a plea form. It appears to have your signature down toward the bottom of this. Is this your signature? |
| [Thompson:]       | Yes, sir.                                                                                                                                                                    |
| [Trial court:]    | Before you signed this document, did you read, review, and understand it?                                                                                                    |
| [Thompson:]       | Yes, sir.                                                                                                                                                                    |

| | |
|---|---|
| [Trial court:] | Did you have any questions at all about it that were not answered by your attorney, Mr. Richardson? |
| [Trial counsel:] | Did you have any — he wants to know — |
| [Thompson:] | No, sir. |

. . .

| | |
|---|---|
| [Trial court:] | Do you also understand, or have you had enough time to discuss the case, the terms and conditions of the plea, and any possible defenses with Mr. Richardson, your lawyer? |
| [Thompson:] | Yes, sir. |
| [Trial court:] | Is there anything that he has failed to do that you wanted him to do? |
| [Thompson:] | No, sir. |
| [Trial court:] | Are you completely satisfied with his services? |
| [Thompson:] | Yes, sir. |

. . .

| | |
|---|---|
| [Trial court:] | Mr. Richardson, can you stipulate to a factual basis for the plea? |
| [Trial counsel:] | Yes, Your Honor. |
| [Trial court:] | Mr. Thompson, to the charge of robbery with a firearm or deadly weapon, which is a first-degree felony punishable by up to life in prison, how do you plead to that charge? |
| [Thompson:] | No contest. |
| [Trial court:] | I accept your no contest plea. Find it to be freely, voluntarily, and intelligently entered. I further find that you freely, |

13

> voluntarily, and intelligently waived your constitutional rights, those contained in the plea form, as well as those that I've reviewed out loud with you. I further find that you are alert, oriented, competent, and coherent, and that you understand the nature of the charges and the consequences of the plea to the charges.
>
> I further find that there is a sufficient factual basis for your plea based on your lawyer's stipulation, my review of the documents in the electronic court file, as well as having been the judge that presided over the change of pleas in all of the codefendants' cases, with the exception of the one remaining codefendant who's set for trial during this upcoming trial period.

The trial court's thorough colloquy with Thompson during the change of plea hearing refutes Thompson's claim. In his post-conviction motion, Thompson alleged that trial counsel advised that the trial court would sentence him to twenty years in prison if he pleaded guilty. (Doc. 7-2 at 205–07) During the colloquy, Thompson denied that anyone had promised that he would receive a specific sentence. (Doc. 7-2 at 323) In his post-conviction motion, Thompson alleged that he thought that the maximum sentence for the crime was twenty years if the prosecutor recommended twenty years. (Doc. 7-2 at 206–07) During the colloquy, Thompson acknowledged that he understood that the trial judge could impose a minimum sentence of 70.65 months in prison and a maximum sentence of life. (Doc. 7-2 at 322–23) In his post-conviction motion, Thompson contended that he would not have entered the plea if he had known that the trial judge could impose a sentence up to the statutory maximum. (Doc. 7-2 at 208) At the change of plea hearing, Thompson entered the plea after the trial judge advised Thompson that the trial judge "could go all the way up to life in prison." (Doc. 7-2 at 322)

14

In his federal petition, Thompson further contends that trial counsel did not review the change of plea form with him. (Doc. 1 at 4) However, during the colloquy, Thompson told the trial judge that he had reviewed, understood, and signed the form. (Doc. 7-2 at 323) He further confirmed that he did not have any questions about the form that trial counsel had not answered. (Doc. 7-2 at 323–24)

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Solemn declarations in open court carry a strong presumption of verity." 431 U.S. at 74. On federal habeas, the trial court's finding that Thompson knowingly and voluntarily entered his plea is presumed correct, and Thompson fails to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if trial counsel misadvised Thompson about the maximum sentence that the trial judge could impose if he pleaded guilty, the trial judge cured any deficiency in trial counsel's performance by informing Thompson that he could receive a life sentence. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 799–800 (11th Cir. 1987)).

Lastly, Thompson cannot demonstrate a reasonable probability that he would have rejected the plea and insisted on proceeding to trial. *Hill*, 474 U.S. at 59. An information charged Thompson with robbery with a firearm or deadly weapon, a first-degree felony punishable by life in prison. (Doc. 7-2 at 7–8) § 812.13(2)(a), Fla. Stat. At sentencing, the prosecutor recommended a sentence of twenty years in prison for Thompson and summarized the sentences that the codefendants received (Doc. 7-2 at 337–38):

> [Trial court:] Okay. And as to the remaining codefendants other than Mr. Godtrel Grant, can you tell me what their role in the offense was, who they were, and what sentence they received?
>
> [Prosecutor:] Marcus Wright was the individual who was the driver of the car who waited outside the mall while the robbery was committed. He got a sentence of five and a half years [in prison].
>
> Marvin Wright was the codefendant who testified during [Grant's] trial, and he got ten years [in prison].
>
> And Clarence Mack was the other codefendant who went into the store. He was the one who was wearing like the baseball-type jacket as opposed to [a] sweatshirt, and he got eight years [in prison].

Grant, who was armed with a firearm, exercised his right to trial and received a life sentence. (Doc. 7-2 at 373) Before imposing Thompson's thirty-year sentence, the trial judge provided the following reasons (Doc. 7-2 at 373–75):

> [Trial court:] All right. I sat through the trial of the codefendant, Godtrel Grant. I listened to the testimony, I watched the videos. I saw the video of the defendant, who was clearly the largest physical person of the group of the defendants that went into the jewelry store to commit this robbery. Mr. Grant was armed with a firearm, which was clearly displayed as he walked into the store after this defendant. This defendant had armed himself with a hammer. Whether he intended to hit somebody or not, he armed himself with a hammer to use to break the glass to commit the robbery in this case.

16

> There's absolutely no evidence to suggest that he was under the influence of alcohol, drugs, or any of these other codefendants. He physically could have intimidated or beat any one of them to stop. He chose to go into this store and commit a robbery where three people were threatened with firearms, two of whom had guns held to their head.
>
> I read his sister's letter telling me that I should feel sorry for him because he was such a good guy, because traumatic events weighed on him because in 2009 her — when she was pregnant, her boyfriend got gunned down. His wife, or girlfriend, whatever she is, that has eight children with him, tells me that she and he lived in Overtown, a place where people die everyday on the streets due to gunfire.
>
> He has a prior conviction for robbery, a prior conviction for trafficking cocaine, a first-degree felony. There's nothing in the psychological report prepared by Dr. Regnier that suggests he should be given any mitigating consideration at all.
>
> Based upon what I saw it's the judgment and sentence of the Court — I believe he's already been adjudicated guilty, and fingerprinted, and submitted DNA — that he be sentenced to a term of thirty years [in prison] . . . .

Faced with overwhelming evidence of guilt, including testimony by a codefendant who would have implicated Thompson in the crime and a video recording that depicted the violent armed robbery, Thompson cannot demonstrate a reasonable probability that he would have insisted on proceeding to trial and risked a life sentence. *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015) ("To obtain relief, Diveroli had to 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'

17

But the record establishes that Diveroli faced overwhelming evidence of guilt and had no valid affirmative defenses.") (citation omitted).

Because the record refutes the ineffective assistance of counsel claim, the post-conviction court did not unreasonably deny the claim. 28 U.S.C. § 2254(d).

Ground One is **DENIED**.

Accordingly, it is **ORDERED** that Thompson's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Thompson and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Thompson neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on December 4, 2023.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE